IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

PATTI A. STOVER, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-352-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Patti A. Stover (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further consideration.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 4, 1956 and was 51 years old at the time of the ALJ's latest decision. Claimant completed her high school education as well as some vocational nurse's aids education. Claimant previously worked as a certified nurse aide and certified home health aide. Claimant alleges an inability to work beginning October 13, 2002 due to mental retardation, depression, anxiety, obesity, impaired vision, and degenerative changes to her knees,

lower back, left ankle, and right shoulder.

**Procedural History**

On January 27, 2003, Claimant protectively filed for disability benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application for benefits was denied initially and upon reconsideration. On July 27, 2004, Claimant appeared at a hearing before ALJ Michael Kirkpatrick in McAlester, Oklahoma. On December 15, 2004, the ALJ issued an unfavorable decision, finding Claimant was not disabled during the relevant period. On April 29, 2005, the Appeals Council denied review of the decision. As a result, Claimant appealed the Commissioner's final decision.

On September 14, 2006, this Court reversed the ALJ's decision and remanded the case for further proceedings. Specifically, this Court found that the ALJ's conclusions concerning the severity of Claimant's mental impairments was not supported by substantial evidence. (Tr. 363-364). On remand, the Appeals Council vacated the ALJ's decision and remanded Claimant's claim for further administrative proceedings on November 15, 2006. (Tr. 365-367).

On April 10, 2007, Claimant appeared at a second administrative hearing before ALJ Kirkpatrick. On June 25, 2007, the ALJ issued another unfavorable decision. Claimant did not

4

request review by the Appeals Council. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that while Claimant suffered from severe impairments, they did not meet a listing and Claimant retained the residual functional capacity to perform light work, with some limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the IQ findings of the physician evaluating Claimant's mental status; and (2) reaching an RFC determination that was not supported by substantial evidence.

## Consideration of Physician's Opinions on Claimant's Mental Restrictions.

Claimant first contends the ALJ failed to properly consider the opinions of Dr. Minor W. Gordon, a psychologist. Claimant's psychological testing began on April 30, 2003 when she underwent a consultative mental status examination by Dr. Kathie Ward. Claimant reported her physical problems stem from a knee injury. She had been off of her Zoloft for two weeks but admitted feeling better when she took it - that the emotional instability noted in

the interview was greatly reduced with her medication. Claimant last reported working in October of 2002 but left the job because of knee pain and complaints that she had "lashed out" at a resident. (Tr. 143).

Dr. Ward found Claimant to be cooperative and attentive during the examination, but also found she displayed restlessness and nervousness. She stated she was driven to perfection and became terribly upset and cried when asked mathematical questions she couldn't answer. She would regroup and laugh, then cry again when the next difficult question was presented. She was talkative. Her mood was labile, going from crying to laughing and appeared to have nervousness. No sensorial or cognition problems were noted or problems with concentration and memory. (Tr. 144).

Dr. Ward's diagnosis was Axis I: Adjustment Disorder with mixed anxiety and depressed mood; Axis II: No diagnosis; Axis III: Deferred; Axis IV: Stressors associated with unemployment; and Axis V: GAF of 60. Dr. Ward's prognosis for change was good with treatment. She found Claimant to be motivated for treatment and took a referral. (Tr. 145).

On June 13, 2003, a Psychiatric Review Technique form was completed on Claimant by Dr. Janice B. Smith. Dr. Smith concluded Claimant's anxiety related disorder was not severe. She found mild limitations upon Claimant's activities of daily living, maintaining

social functioning, and maintaining concentration, persistence, or pace. Dr. Smith's ultimate diagnosis was adjustment disorder with mixed anxiety and depressed mood. (Tr. 156-169).

On September 11, 2003, Claimant underwent a consultative psychological examination by Dr. Minor W. Gordon. Claimant reported anxiety but no mental health treatment. (Tr. 272). At the evaluation, Claimant was cleanly and neatly dressed and groomed. She ambulated slowly. Her facial expression demonstrated she was anxious and fearful. Claimant's level of motor activity was less than normal. She was attentive and alert and maintained good eye contact.

Claimant's mood was anxious and depressed. Her sleep was disturbed. Her level of intelligence based on casual conversation was below average. However, evaluating Claimant's intelligence was thought to be misleading because Claimant had years of experience covering up her lack of knowledge. Claimant's social-adaptive behavior was in keeping with her low intelligence. Dr. Gordon concluded Claimant would clearly have difficulty communicating comfortably in a social setting and with work judgments. Claimant admitted thinking that people were against her. (Tr. 273).

Dr. Gordon administered the Wechsler Adult Intelligence Scale-Revised test to Claimant. She scored a verbal IQ of 68, a performance IQ of 72, and a full scale IQ of 68. Dr. Gordon

concluded Claimant's scores were indicative of an intelligence level in the mild range of mental retardation. (Tr. 274).

Dr. Gordon also gave Claimant the Wide Range Achievement Test Revised. In reading and spelling, Claimant scored an equivalence of the end of the seventh grade. In arithmetic, Claimant's score indicated a level at the beginning of the fifth grade. Id.

On the Beck Anxiety Inventory, Claimant earned a score of 16, which was interpreted as an individual suffering from a moderate level of anxiety. On the Beck Depression Inventory, Claimant scored a 21, which was interpreted as an individual suffering from a moderate to severe level of depression. Id.

Dr. Gordon's diagnosis at Axis I: Major depression, severe, without psychotic symptoms, Generalized anxiety disorder, moderate; Axis II: Mental retardation, mild; Axis III: Problems with her right knee and ankle as well asa allergies; Axis IV: Social-adaptive behavior in keeping with low level of intellectual functioning; and Axis V: GAF of 51. Id.

On January 11, 2005, Claimant was evaluated by Marilyn Crawford, M.S. at the Family Crisis Center, Inc. Claimant reported frequent mood swings, anxiety, depression, negative relationships with family members, domestic violence, and chronic health issues. Ms. Crawford found Claimant had unresolved grief over the loss of her parents and brother that triggered her mood lability eventually

8

affecting her job performance and ability to get along with co-workers, as well as depression and anxiety for the past two or three years. Claimant also described educational difficulties. Ms. Crawford concluded Claimant suffered from high levels of anxiety and mood lability, evidenced by rapid fluctuations between crying and laughing. Ms. Crawford believed Claimant could benefit from individual therapy for anger and depression. (Tr. 487-488).

In his latest decision, the ALJ found Claimant suffered from the severe impairments of degenerative joint disease, obesity, anxiety/depression, and low intellect. (Tr. 348). However, the ALJ also concluded Claimant retained the residual functional capacity to perform a significant range of light work with occasional climbing, stooping, kneeling, crouching, and/or crawling. He also found Claimant could perform simple unskilled and detailed semi-skilled but not complex skilled tasks. Id.

Claimant contends the ALJ failed to consider the IQ findings of Dr. Gordon and thereby consider whether Claimant met Listing 12.05(C). This listing requires a claimant to establish the presence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

The parties appear to be in disagreement as to whether the relationship Dr. Gordon was as that of a treating physician or a

9

non-treating source. The ALJ determined Dr. Gordon "did not see claimant in a treating capacity." (Tr. 337). Then, proceeded to apply the factors for determining whether a treating source is entitled to controlling weight, citing Watkins v. Barnhart, 350 F.3d 1297 (10th Cir. 2003). Claimant characterizes Dr. Gordon as a "treating source." Therefore, this Court will consider the same factors as those required of a treating source.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ rejected Dr. Gordon's IQ findings based upon a perceived difference in opinion with Dr. Ward, Claimant's statements, and Claimant's employment history. This Court agrees with Claimant that the ALJ viewed Dr. Gordon's IQ findings in a vacuum, without regard to the other factual findings made by him

concerning Claimant's appearance and behavior during the examination. Moreover, the ALJ's rejection based upon differences in the evaluation by Dr. Ward and by Dr. Gordon is illusory. Dr. Ward did not evaluate Claimant's IQ during her examination and did not administer any IQ testing.

Additionally, the ALJ engaged in the universally rejected practice of finding Claimant's statements incredible when they support a finding of disability and credible when they do not. He relied upon Claimant's statements when they supported his reasons for Claimant's inability to work and the effectiveness of treatment but rejected it when Claimant believed her emotional problems contributed to her inability to work. The ALJ also failed to recognize difficulties Claimant had in maintaining employment. On remand, the ALJ shall re-evaluate the IQ opinions of Dr. Gordon in light of this decision, specifically state the weight given to those opinions, and the reasons for the weight afforded the opinion.

### RFC Evaluation

Claimant also challenges the RFC assessment performed by the ALJ. This Court cannot adequately consider whether the ALJ's RFC determination was correct until Dr. Gordon's opinions have been properly considered. On remand, the ALJ shall reconsider his RFC evaluation as needed.

As a final matter, this Court is aware of the ALJ's statements of incredulity concerning the original remand of this case based upon consideration of Claimant's IQ deficiencies and fully expect he will be equally exasperated with this remand. However, it is also presumed the ALJ will be professional in accepting this decision and performing his function in the process without requiring the reassignment to a different ALJ as suggested by Claimant. Therefore, the request that this Court direct the remanded case be assigned to a different ALJ will not be granted.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

IT IS SO ORDERED this 30th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE